Brinkerhoff, J.
In this cause an information in the nature of ■a quo warranto was originally filed in the district court of Knox ■county. To this information the respondents filed their answer, to which the relators demurred generally. The questions involved *502 arose upon this demurrer, and were deemed of sufficient difficulty and importance to be reserved to this court.
The facts in the case, as they appear in the pleadings, are substantially as follows:
The respondents are the acting trustees of Clinton township, Knox county. This position the relators claim that they are entitled to occupy. Clinton township has been a township in Knox county ever since its organization as a county. By the act passed February 26,1845, entitled “ an act to incorporate the town of Mt. Vernon,” and the acts amendatory thereto (45 Ohio L. 159, and 48 Ib. 400), the town of Mt. Yernon was established in the township of Clinton, and divided into wards. Afterward, in 1855, under section 21 of an act entitled “ an act to amend the act entitled an act to provide for the organization of cities and incorporated villages ” (2 S. & C. 1532), which section provided that “ any town which, by special act of incorporation, has been divided into wards, shall be denominated a city of the second class, if the council shall so determine,” the said town of Mt. Yernon became a city of the second class. At the spring election, in 1867, the people of Clinton township, who resided outside of the limits of the city of Mt. Yernon, voted for the officers of the township, and, on the vote being counted out, the relators had a majority of the votes there cast for township trustees. The ^citizens of Mt. Yernon, on the same day, voted for trustees of the township of Clinton ; and -the respondents, by counting the votes of the citizens of Mt. Yernon with the votes of the citizens in Clinton township, residing outside of the limits of' the city, had a majority over the relators. The respondents were declared elected the township trustees, and have ever since been so acting.
The precise questions in this case are, whether, on the organization of a city of the second class divided into wards, and the boundaries of which are not coterminous with a township, the territory comprised with the city remains a part of the township or townships within the limits of which it is situate; and whether the electors of such city are entitled to vote, at the election of trustees of the township within the limits of which they respectively reside.
These questions depend wholly upon the statutes which, either expressly or by implication, have a bearing upon them; and, in the examination of these, we have been greatly aided by the industry *503 of counsel in the case. But the statutes which bear directly or remotely on the questions presented are numerous and voluminous ;■ so much so, that a full collation and minute review of them would be tedious, and, at the same time, of but little if any public interest. Let it suffice to say, therefore, that, after a full consideration of the case, we have come to the following conclusions:
1. Neither as a matter of theory or practice, is there any necessary difficulty in the existence and harmonious working of a civil-township organization, and, at the same time, of a city organization! within the limits of such township, or within the limits of more than one township; and the statutes nowhere provide, either expressly or by just implication, that, on the organization of a city within the limits of a township or townships, the territory within the city limits shall cease to be a part of the townships or townships from which the same was taken. But there are clear indications of a contrary legislative intent. 2 S. & C. 1547, sec. 175.
And cases where the boundaries of cities are, or become, coterminous with those of the township in which they are *located, are specially provided for by statutes which have no direct application to this case.
2. Under the statutes, cities of the second class are provided with assessors and supervisors of highways of their own; from which it resxilts, by implication, that the electors of the city ought not, and are not entitled to vote for township officers whose functions are in all respects similar, and can be exercised only in that part of the township without the city limits.
3. But, in the offices of township trustees, clerk, treasurer, justices of the peace, and constables, the electors and tax-payers of the city have, in some or in all respects, a like interest with electors outside the city limits, and are entitled to vote in the choice of them.
4. And it seems to us, that where the township has not been divided into election precincts, the electors, though resident within a city of the second class divided into wards, are entitled to vote, and ought to vote for township officers last above named only at the general township polls of the township in which they respectively reside; and in cases where the township has been divided into election precincts covering the territory within the city limits, the electors of the city are entitled to vote for the township officers last aforesaid only at the township poll of the precinct in which they respectively reside. '
*504 5. It is averred in the answer, and of course admitted by the demurrer, that “ the electors of said township residing within the •corporate limits of said city, voted at the places properly fixed and designated for holding said election within their respective wards." Now, by the act of March 4,1853, “to provide for the division of townships into election precincts ” (S. & 0.1573), the county commissioners, on certain terms therein prescribed, are authorized to ■subdivide townships into election precincts; and, under this act, it was competent for the county commissioners to have so subdivided Clinton township into precincts, that the boundaries of certain precincts would correspond, in their limits, with the limits of, the several wards of the city of Mt. Yernon; and, under the averment of the answer above quoted, and there *being no showing to the contrary, this will be presumed to have been done.
The demurrer to the answer will be overruled; and, as the official term of the de facto officers is now on the eve of expiration by lapse of time, the information will be dismissed at the costs of the relators.
Day, C. J., and White, Welch, and Scott, JJ., concurred.